CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
GLOBAL STEEL PHILIPPINES (SPV-AMC) INC.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GLOBAL STEEL PHILIPPINES (SPV-AMC) INC.,

        Plaintiff,

   v.

IMT SHIPPING & CHARTERING GmbH,

        Defendants.
------------------------------------------------------------------X

JUDGE BUCHWALD

07 CIV 9499

**VERIFIED COMPLAINT**

   Plaintiff GLOBAL STEEL PHILIPPINES (SPV-AMC) INC., (hereinafter "GLOBAL"), by its attorneys, as and for its Verified Complaint against the Defendant, IMT SHIPPING & CHARTERING GmbH (hereinafter "IMT"), alleges upon information and belief as follows:

### JURISDICTION

   1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2. At all times material hereto, Plaintiff GLOBAL was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with a registered office at 141 Sedeno corner Valero Sts., Salcedo Village, Makati City, 1227, Philippines and principal place of business at 9200 Suarez, Iligan City, Philippines.

3. The plaintiff GLOBAL is a manufacturer and supplier of steel products.

4. At all times material hereto, Defendant IMT was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country by virtue of foreign law with an office and principal business at Furstenwall 146, D-40217, Dusseldorf, Germany.

5. The Defendant IMT is engaged in business as an owner or disponent owner of ocean-going vessels, which it employs to carry ocean cargo in exchange for payments of freight and/or hire.

## AS AND FOR A CAUSE OF ACTION
## FOR BREACH OF MARITIME CONTRACT

6. On June 14, 2007, IMT, as owner, entered into a charter party contract with GLOBAL, as charterer, whereby IMT's vessel, the M/V DRAKE, was chartered for a voyage charter by GLOBAL to carry a cargo of 40,000 metric tons of steel slabs, with Global's option for a full cargo of 42,000 metric tons, from Brazil to the Philippines (hereinafter the "Maritime Contract").

7. The charter party contract between Defendant IMT and Plaintiff GLOBAL is a maritime contract.

8. The main terms of the maritime contract were set forth in a written fixture recap dated June 14, 2007, which was confirmed to be in order by Defendant IMT, and the details of the maritime contract were set in a pro forma charter party previously entered into by Plaintiff GLOBAL and Defendant IMT for the vessel the M/V SEA BRILLIANCE and those details were incorporated by reference to same in the fixture recap of June 14, 2007.

9. Under the maritime contract, the plaintiff GLOBAL was to pay for the ocean transport of its cargo at a freight rate of US$68.00 per metric ton of steel shipped on board the M/V DRAKE.

10. The contract specified that the vessel the M/V DRAKE was to be ready to load by August 5, 2007, but if the vessel was delayed, an extension until August 10, 2007 was permitted by the fixture recap of the maritime contract.

11. On July 7, 2007, almost three weeks after the Maritime Contract was confirmed by Defendant IMT and after Plaintiff GLOBAL took action in reliance on the maritime contract by arranging to have its cargo ready for shipment on the M/V DRAKE

within the agreed dates for loading, the defendant IMT repudiated the Maritime Contract and refused to perform its obligations without any valid or reasonable cause.

12.    Instead, the defendant IMT indicated that it was willing to perform the contract only if additional payments at a higher rate of freight were made and the dates for loading were extended beyond those already agreed.

13.    Defendant IMT's demands were not acceptable to plaintiff GLOBAL, and plaintiff GLOBAL insisted that defendant IMT perform its obligations as agreed under the maritime contract dated June 14, 2007, which the defendant IMT again refused to do without any valid or reasonable cause.

14.    By reason of the defendant IMT's failure to present the M/V DRAKE at the agreed upon loading port on the agreed upon dates and by reason of the defendant IMT's failure to load and carry plaintiff's cargo at the agreed upon freight, the defendant IMT breached the maritime contract and, thus, became liable to the plaintiff in damages resulting from the breach.

15.    Plaintiff GLOBAL, in order to mitigate its damages, arranged for another vessel to carry the cargo that was to have been carried by the M/V DRAKE.

16.    Because of market changes and despite the best efforts of Plaintiff GLOBAL to obtain the same terms as were set forth in the maritime contract with

defendant IMT, the plaintiff GLOBAL was forced to pay a higher freight rate of US$80.15 for the replacement vessel and the replacement vessel could only carry 38,993.10 metric tons of its slab steel cargo, which was roughly 3007 metric tons less than the plaintiff GLOBAL would have been able to ship on the M/V DRAKE under the maritime contract with Defendant IMT.

17. Had Defendant IMT carried the cargo of 38,993.10 metric tons of slab steel as per the maritime contract, the plaintiff GLOBAL would have had to pay $473,766.28 less than it was ultimately required to pay to ship its slab steel cargo on the alternate vessel that it chartered to mitigate its damages and the defendant IMT is liable in damages to the plaintiff for extra costs incurred to ship its cargo on the alternate vessel.

18. Plaintiff GLOBAL reserves its rights to claim damages for the balance of the quantity of approximately 3,007 metric tons that it was unable to ship on the M/V DRAKE.

19. Pursuant to the maritime contract, the defendant IMT is now liable to the Plaintiff GLOBAL for the sum of at least $473,766.28 in damages for the breach of the maritime contract.

20. Despite due demand, the defendant IMT has failed to pay the amounts due and owing under the maritime contract.

21.     Under the maritime contract, and pursuant to the applicable Clause 32 of the MV SEA BRILLIANCE charter party, any disputes arising between the parties are to be governed by English law and shall be referred to arbitration in London in accordance with the London Maritime Arbitration Association Terms.

22.     As a consequence of Defendant IMT's refusal to perform under the maritime contract, the Plaintiff GLOBAL is in the process of commencing London Arbitration under the terms of the maritime contract pursuant to which all disputes between the parties are to be submitted to arbitration in London with English law to apply.

23.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English law.

24.     As best as can now be estimated, Plaintiff expects to recover the following amounts in arbitration at London:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | $473,766.28 |
| B. | Estimated interest on claims: 3 years at 8%, compounded quarterly | | $127,083.91 |
| C. | Estimated attorneys' fees: | | $100,000.00 |
| D. | Estimated arbitration costs/expenses: | | $60,000.00 |
| **Total** | | | **$760,850.19** |

## PRAYER FOR RELIEF

25. Notwithstanding the fact that the liability of the defendant is subject to determination by arbitration in London, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the defendant within this District and held by various parties, as garnishees.

26. Plaintiff GLOBAL believes that some of these assets, *to wit*: bank accounts; payments from the purchasers of other cargoes; freight and/or hire payments from other charterers or shippers of cargo, and others monies being wire transferred to or from the defendants are being transferred through intermediary banks located in this District in the possession of one or more garnishees, namely, banks or financial institutions located in New York.

27. As set forth in the accompanying affidavit of Owen F. Duffy, the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

28. Because this Verified Complaint sets forth an *in personam* maritime claim against the Defendant and because the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B

attachment and garnishment are met and Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the Defendant and/or *quasi in rem* jurisdiction over the property of the Defendant so that an eventual judgment and/or award can be satisfied.

29. In addition to an attachment in the full amount of the claim as set forth above, Plaintiff also seeks an attachment over an additional sum to cover awardable attorneys' fees and costs which are recoverable in arbitration pursuant to the London Maritime Arbitration Association's rules.

WHEREFORE, Plaintiff prays as follows:

A. That the Defendants be summoned to appear and answer this Verified Complaint;

B. That the Defendant not being found within this District, as set forth in the Affidavit of Owen F. Duffy, then all of its assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the Defendant within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and same be attached as security for Plaintiff's damages;

C. That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the London arbitration panel, so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, *i.e.* US $760,850.19, and that a judgment of condemnation and sale be entered against the

property arrested and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D.  That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
October 23, 2007

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
GLOBAL STEEL PHILIPPINES (SPV-AMC) INC.

By: _____
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
GLOBAL STEEL PHILIPPINES (SPV-AMC) INC.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GLOBAL STEEL PHILIPPINES (SPV-AMC) INC.,

      Plaintiff,

  v.                                              07 CV _____ (___)

IMT SHIPPING & CHARTERING GmbH,             **VERIFICATION**

      Defendants.
-----------------------------------------------------------------X
STATE OF NEW YORK :
         : ss.
COUNTY OF NASSAU :

  BEFORE ME, the undersigned authority, personally came and appeared Owen F. Duffy who, after being duly sworn, did depose and state:

  1. That he is a partner in the law firm of Chalos, O'Connor & Duffy LLP, counsel for the Plaintiff, GLOBAL STEEL PHILIPPINES (SPV-AMC) INC., herein;

  2. That he has read the foregoing complaint and knows the contents thereof;

3.      That he believes the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys; and

4.      That the reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

Dated: Port Washington, New York
       October 23, 2007

                                        CHALOS, O'CONNOR & DUFFY, LLP
                                        Attorneys for Plaintiff

                            By:         _____
                                        Owen F. Duffy (OD-3144)
                                        366 Main Street
                                        Port Washington, New York 11050
                                        Tel:  (516) 767-3600
                                        Fax:  (516) 767-3605

Subscribed and sworn to before me this
October 23, 2007

_____
Notary Public, State of New York

GEORGE E. MURRAY
Notary Public, State of New York
No. 02MU6108120
Qualified in New York County
Commission Expires April 12, 2008

2